**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Lorry Van Chase, ) | |
| ) | |
| Petitioner, ) | **ORDER** |
| ) | |
| vs. ) | Case No. 1:25-cv-3 |
| ) | |
| Joseph Joyce, Warden of North Dakota ) | |
| State Penitentiary, ) | |
| ) | |
| Respondent. ) | |

Petitioner, Lorry Van Chase, a prisoner in state custody, filed a petition for habeas corpus relief under 28 U.S.C. § 2254. (Doc. No. 1). Respondent, Joseph Joyce, moves for dismissal of the Petition. (Doc. No. 15). For the reasons discussed herein, Respondent's Motion to Dismiss is **GRANTED** and the Petition is **DENIED** without hearing or appointment of counsel.

**I.     BACKGROUND**

Chase was charged with one count of gross sexual imposition in Rolette County District Court in September 2013. A jury found him guilty, and Chase was sentenced to 40 years imprisonment. (Doc. Nos. 15-2, 15-3). The North Dakota Supreme Court affirmed Chase's conviction on appeal. North Dakota v. Chase, 869 N.W.2d 733 (N.D. 2015). The background of Chase's prosecution was summarized as follows:

> In 2013 Chase was charged with one count of gross sexual imposition against Jane Doe in violation of N.D.C.C. § 12.1-20-03(1)(a) for an assault that occurred in 2007. At trial Jane Doe testified she knew Chase had been in jail. A medical professional's testimony referenced other victims. Chase moved for a mistrial after both instances. The district court denied both motions for mistrial and issued a curative instruction to the jury. Chase sought to offer evidence of prior consensual sexual conduct with Jane Doe. The district court held that the testimony Chase intended to offer was prohibited by N.D. R. Ev. 412.
>
> . . .

1

> . . . Jane Doe testified about one encounter with Chase in December 2007. Chase alleged that the location described by Jane Doe was improbable due to the steep elevation and heavy snowfall. Chase sought to impeach Jane Doe's testimony about the location of the assault by questioning her about instances of prior consensual sexual activity with Chase in locations he alleged were more accessible for the time of year. The court found the door had not been opened for purposes of admitting evidence about the night in question, his relationship with Jane Doe prior to that night, and about the level of communication he had with her after the assault. Chase was not prevented from offering evidence about the geography, elevation or snowfall at the location described by Jane Doe.
>
> . . .
>
> The district court did not err by failing to grant a mistrial and by refusing to admit evidence of prior sexual contact. We affirm the criminal judgment after concluding Chase is not entitled to a new trial or reversal of his conviction.

Chase, 869 N.W.2d at 734, 737.

## II.   PROCEDURAL HISTORY

After his conviction was affirmed, Chase filed for state post-conviction relief alleging ineffective assistance of counsel. (Doc. No. 15-5). The district court denied the application without holding an evidentiary hearing (Doc. No. 15-6). The North Dakota Supreme Court reversed the denial and remanded for an evidentiary hearing on trial counsel's alleged ineffective assistance. (Doc. No. 15-7). After an evidentiary hearing, the district court denied Chase post-conviction relief. (Doc. No. 15-8). Chase appealed but failed to file a transcript of the evidentiary hearing; so, the North Dakota Supreme Court summarily affirmed the denial of post-conviction relief. (Doc. Nos. 15-9, 15-10).

Next, Chase filed a Rule 60(b) motion for relief from judgment, arguing his trial counsel had directed him to lie about critical areas in the case and contending post-conviction relief counsel was ineffective for failing to submit a transcript of the evidentiary hearing on appeal. (Doc. Nos. 15-11 at 1-2). The district court deemed the Rule 60(b) motion an application for post-conviction relief and summarily denied it as a misuse of process under state law. (Doc. No. 15-12 at 6). On

appeal, the North Dakota Supreme Court reversed in part, holding summary dismissal without notice to Chase was improper, and remanded for additional proceedings. (Doc. No. 15-14 at 6-7).

On remand, the district court summarily denied post-conviction relief concluding the trial attorney was not ineffective for failing to disclose an alleged conflict of interest, post-conviction counsel was not ineffective in presenting a conflict-of-interest argument or ineffective assistance of trial counsel claim, and holding a bare assertion of newly found evidence involving a medical record of the victim did not warrant relief. (Doc. No. 15-15). An appeal to the North Dakota Supreme Court resulted in another remand for additional proceedings. (Doc. No. 15-17).

On remand, the district court held an evidentiary hearing on Chase's amended application for post-conviction relief. (Doc. No. 15-18). The amended application alleged (1) trial counsel failed to discover a critical medical report that would have raised questions about the victim's allegations, and (2) a law enforcement member made inappropriate and prejudicial comments to the jury during deliberations. Id. at 2. During the hearing, evidence was presented that trial counsel was aware of the victim's medical record prior to trial. Id. at 2. Testimony from one of the jurors indicated a bailiff or law enforcement officer told them there could not be a hung jury, the verdict had to be yes or no. Id. at 3. The current Sheriff and the former Sheriff testified that they did not enter the jury room and give such an instruction to the jurors during the deliberations. Id. at 5. Both testified they were trained not to interact with the jury. Id. The Sheriff at the time of the trial testified he had no knowledge of anyone else speaking with the jury, including the deputies working under him. Id.

The district court held the victim's medical report was not newly discovered and, thus, not a basis for post-conviction relief. Id. at 7. As to improper jury contact, the district court concluded the juror's testimony was inconsistent, ambiguous, uncertain and lacked corroboration by any

3

other evidence. Id. at 8. The district court denied the amended application. Id. at 9. Chase appealed and the North Supreme Court affirmed. (Doc. Nos. 15-19, 15-20).

Chase filed a petition for habeas corpus relief in this Court on January 8, 2025. (Doc. No. 1). He alleges: (1) ineffective assistance of trial counsel; (2) newly discovered evidence shows he is not guilty of the crime charged; (3) improper contact with the jury deprived him of a fair trial; and (4) the trial court should have granted his motions for mistrial. The petition is timely made under 28 U.S.C. § 2244(d)(1). (Doc. No. 15 at 2-3).

### III.    GOVERNING LAW

#### A.    Scope of Review

Under 28 U.S.C. § 2254(a), a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. When a state court has adjudicated the constitutional claim on the merits, a federal court's review is strictly limited by 28 U.S.C. § 2254(d). The federal court may grant relief *only* if it determines the state court's decision (1) is directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) is based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d); see generally Harrington v. Richter, 562 U.S. 86, 97-100 (2011); Williams v. Taylor, 529 U.S. 362, 399-413 (2000). This is a highly deferential standard of review, often referred to as "AEDPA deference," because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996. E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 n.1 (2010).

Recently, the United States Supreme Court has added to the requirements for obtaining habeas corpus relief. In Brown v. Davenport, 596 U.S. 118, 134 (2022), the Supreme Court held

that AEDPA's conditions for § 2254 relief did not erode "the equitable discretion traditionally invested in federal courts." And "a petitioner who prevails under AEDPA must still . . . persuade a federal habeas court that 'law and justice require' relief." Id. To do so, a petitioner must satisfy the conditions of AEDPA *and* the standard of Brecht v. Abrahamson, 507 U.S. 619 (1993). Id. at 134. Brecht holds that "a state prisoner should not receive federal 'habeas relief based on trial error unless' he can show the error had a 'substantial and injurious effect or influence' on the verdict." Id. at 133 (quoting Brecht, 507 U.S. at 637).

Applying Brown, a federal habeas court may not grant relief unless the court has "'grave doubt'—not absolute certainty—about whether the trial error affected the verdict's outcome." Id. at 135-36; see also Yang v. Roy, 743 F.3d 622, 626 (8th Cir. 2014) ("A 'substantial and injurious effect' occurs when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict.") (quoting Toua Hong Chang v. Minn., 521 F.3d 828, 832 (8th Cir. 2008) (in turn quoting O'Neal v. McAninch, 513 U.S. 432, 435 1995)).

The reasons for this Court's limited review are ones of federalism and comity that arise because state courts have primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103. States have a "powerful and legitimate interest in punishing the guilty," so federal intrusion on state sovereignty by granting habeas relief to state prisoners is limited. Brown, 596 U.S. at 132 (internal quotation marks and citations omitted). "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." Id. at 134.

## IV.  DISCUSSION

### A.  Ineffective Assistance of Counsel

For his first ground, Chase claims his trial counsel failed to conduct pretrial investigations which would have allowed him to show the site of the alleged sexual assault was not accessible. (Doc. No. 1 at 5). Chase further claims his trial counsel failed to disclose that he previously represented the victim's first cousin, which Chase claims is a conflict of interest that deprived him of effective assistance of counsel. Id.

To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010) (citations omitted). Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

In reviewing counsel's performance, this Court does not conduct de novo review. For federal courts reviewing state proceedings, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. To grant relief, a federal habeas court cannot simply disagree with a state court but must find the state court's adjudication objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003). When an ineffective assistance claim has been addressed by the state court, habeas review is "doubly deferential." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (citing Cullen v.

Pinholster, 563 U.S. 170, 202 (2011) ("Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review.").

A habeas court examines the ultimate legal conclusion reached by the state court, "not merely the statement of reasons explaining [its] decision." Id. "[W]here there is no 'conspicuous misapplication of Supreme Court precedent' that makes the state court's decision 'contrary to' clearly established law, the proper question is whether there is 'any reasonable argument' that the state court's judgment is consistent with Strickland." Id. at 831-32 (internal citations omitted). "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." Id. at 832 (internal quotation marks omitted).

For the claims of ineffective assistance of counsel, the district court's findings and conclusions are subject to review because the North Dakota Supreme Court did not examine those issues on their merits due to Chase's failure to file a transcript of the hearing. See Chase v. North Dakota, 913 N.W.2d 774 (N.D. 2018) (summarily affirming district court denial of post-conviction relief).

### 1. Failure to Investigate Accessibility

Chase alleges trial counsel, Lynn Boughey, failed to investigate the alleged site of the sexual assault prior to trial and contends such an investigation would have shown the site was not accessible. (Doc. No. 1 at 6). The district court addressed this issue in its order denying relief after conducting an evidentiary hearing. (Doc. No. 15-8 at 9).

Before addressing the location of the assault, however, the district court noted the extensive discovery materials provided to Boughey by the State. Id. Boughey testified he received over 500 documents containing thousands of pages, which he reviewed. Id. He also testified he received

7

over 500 emails from his secretary and Chase, and approximately 63 notes from Chase, which he reviewed. Id. The district court noted that Boughey's trial strategy focused on the alleged date of the assault, December 16, and the credibility and location of the event. Id. at 10. Boughey testified "he cared about the physical location as well as the victim's credibility." Id. The district court found Boughey's trial strategy to be sound. Id.

Chase argued Boughey should have personally visited the location of the assault to be prepared for trial, but the district court disagreed and held Chase did not carry his burden to prove ineffective assistance of counsel. Id. at 8-10. The district court summarized, "[n]o evidence was presented that Mr. Boughey was not aware of the location of where the event occurred. To the contrary, based upon Mr. Boughey's testimony . . . it was quite clear to this Court that Mr. Boughey knew everything he needed to know about Chase's case." Id. at 10. Indeed, the district court concluded "[t]here is incontrovertible evidence showing Mr. Boughey was fully prepared to mount a defense of Mr. Chase[,]" and his "representation as to conducting pretrial investigation and discovery [did] not fall below an objective standard of reasonableness." Id. Chase's contention that Boughey was ineffective was rejected.[1]

On habeas review, this Court must defer to both Chase's counsel and the state court when evaluating an ineffective assistance of counsel claim. Dunn v. Reeves, 594 U.S. 731, 739 (2021). Defense counsel, who often operate under limited time and resources, must make strategic choices and their decisions are difficult to second-guess "because certain tactics carry the risk of 'harming the defense' by undermining credibility with the jury or distracting from more important issues."

---

[1] The district court conducted its ineffective assistance of counsel analysis citing Chisholm v. State, 871 N.W.2d 595 (N.D. 2015). (Doc. 15-8 at 3-4) The Chisolm opinion is consistent with Strickland by requiring a petitioner to show counsel's representation fell below an objective standard of reasonableness and prejudice because of counsel's deficient performance. Chisolm, 871 N.W.2d at 598-99.

8

Id. For a federal habeas court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. "[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." Dunn, 594 at 739 (quoting Burt v. Titlow, 571 U.S. 12, 23-24 (2013)). Deference to the state court means this Court cannot merely disagree but must conclude the state court's adjudication objectively unreasonable. Lockyer, 538 U.S. at 75.

Applying the doubly deferential standard of review required of a habeas court, this Court cannot fault the district court's application of Strickland to the facts developed at hearing. The district court thoroughly and thoughtfully considered the testimony, concluded Boughey's trial strategy was sound, and was convinced that Boughey was fully aware of what he needed to know to defend Chase's case. Chase fails to show the district court's decision involved an unreasonable application of Strickland or an unreasonable determination of the facts based on the evidence presented at hearing. See 28 U.S.C. § 2254(d); Dunn, 594 U.S. at 739 (explaining that rebutting the presumption of reasonableness "rests squarely on the defendant" and "[i]t should go without saying that the absence of evidence cannot overcome [it].")

### 2. Prior Representation of the Victim's Cousin

Chase's second contention regards an alleged conflict of interest because Boughey previously represented a cousin of the victim. Chase alleges this was an impermissible conflict of interest. The district court concluded the alleged conflict failed to show Chase received ineffective assistance of counsel. (Doc. No. 15-8 at 11-12).

The district court concluded that without evidence of actual prejudice, the alleged conflict of interest must be real and substantial to assume Strickland prejudice.[2] Id. at 12. The district court held there was no per se conflict because of Boughey's prior representation of a cousin of the victim. The court reasoned the matters were completely unrelated, the cousin was not involved in Chase's case, and Chase was aware of the representation before trial.[3] Id. Thus, the state court declined to *assume* prejudice based on Boughey's prior representation of the cousin.[4]

This was a reasonable conclusion based on the evidence presented at hearing and is supported by caselaw involving comparable facts. See Nebraska v. Malone, 957 N.W.2d 892,

---

[2] Chase contends Holloway v. Arkansas, 435 U.S. 475 (1978) and Mickens v. Taylor, 535 U.S. 162 (2002) set forth the appropriate standard, not Strickland. (Doc. No. 16 at 8-9). Even if the Court accepts Chase's proposition, he still fails to show an actual conflict that adversely affected Boughey's representation and performance. In Holloway, one attorney was appointed to represent three co-defendants in a joint trial and objected that he could not adequately represent their interests. Holloway, 435 U.S. at 484. In Mickens, the Supreme Court addressed a situation where a court appointed an attorney to represent a juvenile, Timothy Hall, for assault and concealed weapons charges, and later appointed the same attorney to represent Mickens for Hall's murder. Mickens, 535 U.S. at 164-65. The issue in Mickens was whether prejudice should be presumed when a trial court fails to inquire into a potential conflict involving former clients of which the court should have been aware. Id. at 166. 174. The Supreme Court held that a trial court's failure to make the Sullivan-mandated inquiry did not obviate the petitioner's requirement to show the conflict of interest adversely affected counsel's performance. Id. at 174-75. In other words, deficient performance must still be shown. Chase has not shown that Boughey's performance was deficient for the reasons discussed in Section 4.A.1.

[3] Chase disputes he was aware of the relationship and argues no evidence was presented to support this finding. (Doc. No. 16 at 7). Because the Court's analysis does not turn on whether Chase was aware of the prior representation, the dispute is immaterial.

[4] Chase points to an ethics committee's decision that Boughey was required, under the North Dakota Rules of Professional Conduct, to disclose the conflict and seek Chase's consent before undertaking his representation. (Doc. No. 16 at 8). Whether Boughey violated the pertinent Rules of Professional Conduct is a separate inquiry from whether he provided constitutionally deficient performance. This Court is only concerned with the latter question because to obtain habeas corpus relief Chase must show "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Nix v. Whiteside, 475 U.S. 157, 165 (1986) (stating "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel").

(Neb. 2021) (holding distant familial relationship between defense counsel and victim's family (the victim was the son of "a second, third, or fourth cousin" of the attorney) was insufficient to present an actual conflict of interest); see also White v. Georgia, 877 S.E.2d 649, 654 (Ga. Ct. App. 2022) (finding no actual conflict of interest violating the Sixth Amendment where counsel's assistant had a familial relationship with the victim by marriage).

Turning to whether Chase was actually prejudiced, the district court found no actual detriment due to Boughey's prior representation of the victim's cousin. In fact, the court noted the cousin had provided pertinent information regarding the victim that Boughey deemed "exceedingly helpful" and useful in the victim's cross examination. (Doc. No. 15-8 at 13). Even assuming a remote conflict of interest, the district court reasonably applied the Strickland standard and found no actual prejudice. The district court could reasonably conclude that Boughey was better prepared to cross examine the victim based on information received from her cousin. Applying the "doubly deferential" standard required of AEDPA and Strickland, this Court finds no permissible basis to reject the district court's determination.

**B.    Newly Discovered Evidence**

In Ground Two, Chase contends a newly discovered medical record shows he did not engage in the charged conduct. (Doc. No. 1 at 7). Respondent construes Chase's argument as one asserting a gateway claim of actual innocence. (Doc. No. 15 at 6-7). If a gateway claim of actual innocence is successful, the petitioner may have an otherwise barred constitutional claim considered on the merits. Schlup v. Delo, 513 U.S. 298, 315 (1995). Neither the United States Supreme Court nor the Eighth Circuit Court of Appeals have recognized a free-standing "actual innocence" claim. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (observing that the Court has not resolved whether a freestanding claim of actual innocence exists); Feather v. United States, 18

F.4th 982, 987 (8th Cir. 2021) ("Once again, we need not decide whether a freestanding actual innocence claim is cognizable[.]"). Accordingly, to the extent Chase proposes a free standing "actual innocence" claim, the Court will not consider it.

To open a gateway claim, the Eighth Circuit requires a petitioner to come forward with new, reliable evidence that was ***not available*** at trial through the exercise of due diligence. See Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001) ("[E]vidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."); Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011) ("We conclude the district court correctly interpreted Amrine as requiring [petitioner] . . . to come forward with new reliable evidence which was not available at trial through the exercise of due diligence."). The question is whether the medical record was available through the exercise of due diligence, not whether Chase himself was aware of the record. Significantly, the Amrine definition of new evidence applies even in cases where the claim involves ineffective assistance of counsel for failure to investigate, argue, and present evidence that allegedly would prove the petitioner's innocence. See id. at 953; Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004); Osborne v. Purkett, 411 F.3d 911, 919-20 (8th Cir. 2005).

Chase claims a medical record of the victim was discovered after trial that indicated she had been examined eight days after the alleged assault, yet no findings of bruising, bleeding, or injuries were documented. (Doc. No. 1 at 7). Chase alleges the medical record contradicts the victim's trial testimony. Id. Respondent asserts this medical record was not newly discovered, had been provided to Boughey before trial, and fails to warrant habeas relief. (Doc. No. 15 at 7-8).

Whether the medical record is "newly discovered" was addressed by the state district court and North Dakota Supreme Court. Both courts concluded the record was not new because Boughey had the medical record before trial. The North Dakota Supreme Court explained:

> In December 2023, the district court held an evidentiary hearing on Chase's allegations of newly discovered evidence. Regarding the medical record, Chase conceded that – upon review of the evidentiary hearing held on Chase's first application for postconviction relief – **it was clear that Chase's trial attorney had in fact received the medical record before trial.**

Chase v. North Dakota, 14 N.W.3d 37, 40 (N.D. 2024) (emphasis added). (See also Doc. No. 15-18 at 2-3, 7-8). The North Dakota Supreme Court held the "district court's finding that Chase's trial attorney had the medical record before trial bars Chase's application for relief[.]" Id. at 43.

A federal habeas court must accept the findings of the state court unless they represent an unreasonable determination of the facts based on the evidence presented in the state court hearing. 28 U.S.C. § 2254(d)(2). Additionally, a state court's determination of facts shall be presumed correct and may only be rebutted by clear and convincing evidence. Id. § 2254(e)(1). Here, the state court reasonably concluded the medical report was not newly discovered because Attorney Boughey received the report prior to Chase's trial. Chase does not present clear and convincing evidence to rebut the factual determination that Boughey had the medical record prior to trial. Furthermore, the determination that the medical record was not "newly discovered" is consistent with the Eighth Circuit's standard in Amrine. See Wilson v. Lewis, No. 4:14-cv-72, 2016 WL 8652296, at *15 (E.D. Mo. Dec. 30, 2016) (concluding a witness's pretrial deposition testimony was available at trial and not "new" for purposes of actual innocence claim); Orre v. Prudden, No. 4:10-cv-518, 2013 WL 655155, at *3 (E.D. Mo. Feb. 22, 2013) (concluding audio and video recordings of victim interviews were not new evidence where trial counsel reviewed the recordings prior to petitioner's guilty plea). Thus, this claim fails to warrant habeas relief.

C.     **Contact with Juror During Deliberations**

In Ground Three, Chase claims a uniformed law enforcement officer had contact with the jury outside the courtroom, telling them it could not be a hung jury. (Doc. No. 1 at 8). Chase learned about the alleged contact with the jury after his conviction. Chase claims one of the jurors testified she would have remained undecided absent the outside contact. Id. Chase asserts his Sixth Amended rights were violated.

The Supreme Court has long established that "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . presumptively prejudicial. Remmer v. United States, 347 U.S. 227, 229 (U.S. 1954); see also United States v. Caldwell, 83 F.3d 954, 956 (8th Cir. 1996). The presumption is not conclusive, and the government is afforded an opportunity to establish the contact was harmless to the defendant. United States v. Muhammad, 819 F.3d 1056, 1062 (8th Cir. 2016).

Whether there was outside contact with the jury during deliberations was addressed during an evidentiary hearing before the state district court on December 8, 2023. (Doc. No. 15-18 at 4-6). Chase was represented by counsel at that hearing. Three witnesses testified regarding the alleged contact: the juror, Heidi Davis; the county sheriff at the time of Chase's trial; and the current sheriff, who was a former peace officer working as court security at the time.

Davis testified she could not recall who the individual was that allegedly entered the jury room—she thought maybe a bailiff or law enforcement, she admitted not reporting the contact to anyone at the time, and first mentioned the incident to Chase's investigator several years after his conviction. Id. at 3-4. Both the sheriff and former sheriff testified they had no participation with the jury, and the former sheriff indicated he had no knowledge of anyone else speaking with the jury, including his deputies. Id. at 5. The district court was not persuaded by Davis's testimony.

Id. at 6-7. The court concluded Davis's testimony lacked details, contained inconsistencies, was not corroborated by any other juror, and conflicted testimony by other witnesses Id. at 5-7. Thus, the court declined to find that improper contact with the jury occurred.

Chase challenged the district court's conclusion on appeal from the denial of post-conviction relief. Chase, 14 N.W.3d at 43. The North Dakota Supreme Court thoroughly reviewed the testimony presented at hearing from Davis, and the Sheriffs, Trottier, and Gustafson. Id. at 40-42. The state supreme court concluded the lower court's determination of no jury contact was a factual finding that was supported by the record and not clearly erroneous. Id. at 44. Because Chase did not meet his evidentiary burden to show contact with the jury, the North Dakota Supreme Court held an analysis of prejudice was not required. Id.

Chase has not come forward with clear and convincing evidence to rebut the presumption of correctness afforded to factual determinations by state courts. See 28 U.S.C. § 2254(e)(1). Here, the state district court had the opportunity to hear and observe the witnesses firsthand at the evidentiary hearing. (Doc. No. 15-18 at 2-4, 6-7). The court was able to make credibility determinations and concluded Davis's testimony did not hold enough sway to show improper contact with the jury occurred, and the North Dakota Supreme Court agreed.

A federal habeas court reviewing a state-court decision cannot characterize a "factual determination[ ] as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 576 U.S. 305, 313-14 (2015). This court may reject the state court's factual findings only if they are proven to be incorrect by clear and convincing evidence. Smulls v. Roper, 535 F.3d 853, 861 (8th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). The deference owed to state courts includes deference to its credibility determinations. Id. at 864. A determination based on credibility may be overturned only if the "credibility determinations were

objectively unreasonable based on the record." Id. Chase fails to show the district court's factual determinations were incorrect by clear and convincing evidence. This Court concludes the district court's factual findings and credibility determinations were objectively reasonable based upon the record. This ground fails to warrant habeas relief.

### D. Failure to Grant Mistrial

Chase's fourth and final ground for relief alleges the trial court improperly denied a motion for mistrial after the victim testified that Chase had previously been in jail, and wrongly denied a second motion for mistrial after a medical professional referred to other victims during his testimony. (Doc. No. 1 at 10). Respondent asserts the North Dakota Supreme Court addressed these arguments on direct appeal and found no abuse of discretion in denying Chase's motion for mistrial. (Doc. No. 15 at 9-10); See Chase, 869 N.W.2d at 735.

It appears Chase has procedurally defaulted this ground by failing to present it in any of his post-conviction relief applications. See Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (explaining if a petitioner failed to raise claims before the state court in accordance with state procedural requirements and those claims are barred from state court review, the claims are considered "technically exhausted," but generally barred from review by a "procedural default"). Chase did not raise the issue in the first application for post-conviction relief, nor in the Rule 60(b) motion for relief, second application for post-conviction relief, or amended petitions for post-conviction relief. (Doc. Nos. 9-19, 9-38, 9-47, 9-57, 9-63).

A federal habeas court is typically precluded from considering any issue that the petitioner has failed to fairly present in the state post-conviction proceedings. Wemark v. Iowa, 873 F.3d 1018, 1021 (8th Cir. 2017); Wooten v. Norris, 578 F.3d 767, 777 (8th Cir. 2009) ("A claim is procedurally defaulted if a habeas petitioner failed to raise it in state proceedings."). "A claim has

16

been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." Wemark, 873 F.3d at 1021.

Though there are limited exceptions to avoid procedural default, such as "cause and prejudice" and "actual innocence," Chase does not meet either. See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (stating "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations."); Coleman v. Thompson, 501 U.S. 722, 750 (1991) (explicitly adopting the "cause and prejudice" and "fundamental miscarriage of justice" exceptions for habeas claims procedurally defaulted in state court and later asserted on federal habeas review); Thomas v. Payne, 960 F.3d 466, 471 (8th Cir. 2020) (observing that only in limited circumstances where a prisoner can demonstrate cause and actual prejudice or a fundamental miscarriage of justice, may the court consider a procedurally defaulted claim).

Because Chase has not demonstrated cause and prejudice or actual innocence to overcome this procedurally defaulted claim, the Court declines to address it in detail. See Collier v. Norris, 485 F.3d 415 (8th Cir. 2007) (requiring cause and prejudice or actual innocence to overcome procedural default.). It is sufficient to note that Chase has not shown the denial of the motion violated his right to a fair trial. Thus, even if the claim were not defaulted, the Court concluded it would fail on the merits. Cf. DelVecchio v. Wengler, No. 08-2220, 2011 WL 3035110, at * 18 (D. Minn. June 14, 2011) (concluding trial court's refusal to declare mistrial after minor victim testified her dad told her not to tell anyone of abuse did not result in a trial so fundamentally unfair as to deny petitioner a fair trial), report and recommendation adopted, 2011 WL 3025698 (D. Minn. Jul. 25, 2011).

In sum, Chase does not satisfy the AEDPA standard for habeas relief because the state court decisions were not directly contrary to, or an unreasonable application of, United States Supreme Court precedent, or based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d).

### E.     Motion for Hearing

Chase requests appointment of counsel and a hearing on his petition for habeas relief. (Doc. No. 20 at 3). Chase does not clarify whether he is requesting an evidentiary hearing or oral argument. Evidentiary hearings in federal habeas matters are the exception, not the rule because petitioners are required in most cases to develop the factual bases for their federal claims in the state-court proceedings. See 28 U.S.C. § 2254(e)(2).[5] Federal evidentiary hearings are not available to develop the necessary facts unless a petitioner can show his or her claims rely upon a new, retroactive law or that petitioner could not have previously discovered the facts by the exercise of due diligence. Id. None of these circumstances exist. Consequently, the Court concludes that an evidentiary hearing is neither necessary nor appropriate, so counsel is not warranted. Furthermore, the Court concludes oral argument is unnecessary.

---

[5] Section 2254(e)(2) provides:

(e) (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

## V.    CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. For the reasons set forth above, Chase's Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus fails to warrant relief under AEDPA. Therefore, the Court need not reach the Supreme Court's equitable precedents. Accordingly, the Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus (Doc. No. 1) and Motion for Hearing (Doc No. 21) are **DENIED.** Respondent's Motion to Dismiss (Doc. 14) is **GRANTED**.

It is further **ORDERED**:

1.    The Court finds that any appeal would be frivolous, could not be taken in good faith, and may not be taken *in forma pauperis*;

2.    Based upon the entire record before the Court, dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, a certificate of appealability will not be issued by this Court. See Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under Section 2253(c)). If the petitioner desires further review of his petition, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with Tiedeman.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 16th day of July, 2025.

> */s/  Clare R. Hochhalter*
> Clare R. Hochhalter, Magistrate Judge
> United States District Court